1  Tigran Martinian, Esq.   | SBN 247638
   Arash H. Zabetian, Esq. | SBN 291403
2  (ahz@martinianlaw.com)
   **MARTINIAN & ASSOCIATES, INC.**
3  2801 Cahuenga Blvd., West
   Los Angeles, CA 90068
4  Tel:  (323) 850-1900
   Fax: (323) 850-1943
5
6  *Attorneys for Plaintiffs*
   DELMY Elizabeth Fuentes, D.G.F., and A.C.F.,
7  by and through his guardian ad litem, DELMY Elizabeth Fuentes

Eugene P. Harris, Esq. | SBN 214545
(pat@patharrislaw.com)
**LAW OFFICE OF PAT HARRIS, PC**
3940 Laurel Canyon Blvd # 955
Studio City, CA 91604
Tel: (626) 432-7274

8            **IN THE UNITED STATES DISTRICT COURT**

9        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11 DELMY ELIZABETH FUENTES, an individual )   CASE NO.: CV14-6231 RGK (FFMx)
   and as successor-in-interest; D.G.A., a minor by )
12 and through his guardian ad litem, DELMY )   **SECOND AMENDED COMPLAINT**
   ELIZABETH FUENTES; A.C.F., a minor by and )
13 through his guardian ad litem, DELMY )   **1.  42 U.S.C. § 1983**
   ELIZABETH FUENTES, )           **(Use of Excessive Force)**
14                                            )   **2.  42 U.S.C. § 1983**
            Plaintiff,                        )           **(Deprivation of the Rights to**
15                                            )           **Familial Relationship)**
            v.                                )   **3.  42 U.S.C. § 1983**
16                                            )           **(Fourteenth Amendment**
   CITY OF LOS ANGELES, a governmental )           **Deprivation of Liberty Interest**
17 entity; CHIEF CHARLIE BECK, an individual; )           **Without Due Process of Law)**
   SARGENT RICHARDSON, an individual; )   **4.  Conspiracy to Violate Civil Rights**
18 UNKNOWN NUMBER OF LOS ANGELES )           **Pursuant to Title 42 U.S.C. § 1985**
   POLICE OFFICERS, in their individual )   **5.  Violation of Civil Rights Pursuant to**
19 capacities; and DOES 1-10, Inclusive, )           **Title 42 U.S.C. § 1983 (Monell)**
                                              )   **6.  Violation of Civil Rights Pursuant to**
20          Defendants.                       )           **Title 42 U.S.C. § 1983**
                                              )           **(Monell – Deprivation of the Rights**
21                                            )           **of Plaintiffs to Familial Relationship**
                                              )           **with the Decedent)**
22                                            )   **7.  Wrongful Death and Survival**
                                              )           **Damages– Negligence**
23                                            )   **8.  Violation of Cal. Civil Code § 52.1**
                                              )   **9.  Intentional Infliction of Emotional**
24                                            )           **Distress**
                                              )   **10. Violation of Cal. Government Code**
25                                            )           **§ 845.6**
26                                            )
27                                            )
                                              )   **JURY TRIAL DEMANDED**
28                                            )

Plaintiffs, DELMY ELIZABETH FUENTES, as Personal Representative of ESTATE OF JORGE LUIS AZUCENA, deceased, DELMY ELIZABETH FUENTES, as an individual, D.G.A., a minor, by and through his Guardian Ad Litem, DELMY ELIZABETH FUENTES, and A.C.F., a minor, by and through his Guardian Ad Litem, DELMY ELIZABETH FUENTES, on information and belief, allege as follows:

## THE PARTIES

### A. Plaintiffs

1.      At all relevant times, decedent Jorge Luis Azucena, ("Decedent"), was a 26-years-old resident of the County of Los Angeles, State of California.  He prematurely died on September 7, 2013 after the cause of action alleged herein arose in his favor.  Decedent would have been the plaintiff in this action if he had lived.

2.      Plaintiff DELMY ELIZABETH FUENTES ("DELMY") is an individual, and Decedent's registered domestic partner.  DELMY ELIZABETH FUENTES acts for herself, as Personal Representative of the ESTATE OF JORGE LUIS AZUCENA, deceased, as guardian ad litem to her and decedent's son, minor plaintiff D.G.F. and as guardian ad litem to her son A.C.F. a minor who resided with the decedent in his household for previous 180 days of his passing and was dependent on the decedent for one-half or more of his support.   DELMY, D.G.F., and A.C.F. are decedent's sole surviving heirs-at-law, and as such, have standing to sue for the wrongful death of the decedent and for violations of his constitutional rights.  At all relevant times, plaintiffs had a close and intimate relationship with decedent, and plaintiffs depended upon decedent for love, affection, emotional, social, and financial support, care, comfort, guidance, and society, among the other benefits one receives from a relationship with one's husband and father. Plaintiff DELMY (as an individual and personal representative, and as guardian,) and plaintiffs D.G.F. and A.C.F. are at times referred to collectively herein as "plaintiffs."  At all relevant times, plaintiffs were residents of the County of Los Angeles, State of California.

### B. Identified Defendants

3.      Named defendants and defendants whose identity is currently unknown herein are sued individually and in their official capacity as sworn peace officers of the City of Los Angeles,

Martinian
& Associates, Inc.
Lawyers

State of California, for acts and conduct under color of law.

4.    All Defendants are clothed with the authority of state law and act under color of state law, that is, under color of the Constitution, statutes, laws, rules, regulations, and customs of the State of California at all times relevant to this suit.

5.    The Defendant CITY OF LOS ANGELES, ("CITY"), at all times herein mentioned, was and is a governmental entity organized and existing under the laws of the State of California.

6.    The Defendant, CHARLIE BECK, is believed to be a citizen and resident of Los Angeles County, California, and was at all times material to the allegations in this Complaint, employed as the Chief of Police by the Los Angeles Police Department, and is responsible for the supervision and training of the Defendants.  Defendant BECK, as the Chief of Los Angeles Police Department is further, responsible for making and/or implementing policies and practices used by law enforcement officers employed by the City of Los Angeles, regarding arrests, providing medical care to detainees and/or arrestees, and the use of force.  Defendant BECK is sued for damages in his individual capacity and for injunctive relief in his official capacity.

7.    The Defendant, SARGENT RICHARDSON, is believed to be a citizen and resident of Los Angeles County, California, and was at all times material to the allegations in this Complaint, employed as an supervising officer by the Los Angeles Police Department, and is responsible for supervision of the individual Defendant law enforcement officers whose, as more fully alleged below, conduct gives rise to this lawsuit. Defendant RICHARDSON, as a supervising official, is further responsible for training, supervision, and control of those currently unidentified law enforcement officers who inflicted constitutional injury on decedent and Plaintiffs.  Defendant RICHARDSON, as a supervising officer, set in motion, acquiesced in, and/or showed a reckless and callous indifference to a series of acts and/or knowingly refused to terminate a series of acts by those currently unidentified officers who interacted either directly or indirectly with decedent and/or Plaintiffs by the currently unidentified law enforcement officers, which RICHARDSON knew or should have known, would cause said officers to inflict the constitutional and personal injury. Defendant RICHARDSON is sued for damages in his individual as well as supervisory capacity and for injunctive relief in his official capacity.

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL
Case No. CV14-6231 RGK-FFM

**C.   Currently Unknown Defendants**

8.     Defendants UNKNOWN NUMBER OF LOS ANGELES POLICE OFFICERS ("UNKNOWN OFFICERS") were at all relevant times, sworn peace officers in the employ of the Los Angeles Police Department and were required to exercise their duties lawfully with respect to individual members of general public, including the Decedent and the Plaintiffs.  Said Officers committed acts and omissions complained of herein while acting on behalf of Defendant CITY. Defendant CITY has refused to disclose identity of these Defendant Officers, and has used all tools in its employ to withhold such information.  As such, while Plaintiffs are aware of acts and omissions of said individuals giving rise to this action, but despite diligent and good faith investigation remain unaware of these officers' identities. True names of these individuals acting color of law will be substituted through further amendment of this Complaint when ascertained.

9.     Defendants UNKNOWN OFFICERS generally fall within three groups of individual officers whose conduct individually and in concert with each other gives rise to the causes of actions and remedies prayed herein.  First set of currently unidentified officers – all employees of CITY and acting under color of law – consists of those law enforcement officers and those others acting under color of law who were present during detention and/or arrest of the decedent and transporting decedent to the Los Angeles Police Department Southwest Community Police Station.  Second set of currently unidentified officers – all employees of CITY and acting under color of law – consists of those law enforcement officers and those others acting under color of law who were aware of decedent presence within the LAPD Southwest Community Police Station and who violated decedent's constitutional rights and/or otherwise acquiesced or showed reckless indifference toward said violations.  Third set of currently unidentified officers – all employees of CITY and acting under color of law – consists of those law enforcement officers and those others acting under color of law who interacted with DELMY, acquiesced in such interactions, showed callous indifference toward said interactions, and those who directed and/or supervised such interactions with DELMY causing her constitutional and personal injury as more fully explained *infra*.

10.     At all times herein mentioned, defendants DOES 1 through 10 were and/or are

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

members of the Los Angeles Police Department ("LAPD") and acting under color of law.

11.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10, inclusive, whether individual, corporate, associate or otherwise, and of the facts or of all of the facts that give rise to their responsibility in this case, and thus, Plaintiffs sue such DOES by these fictitious names, and because their true names and capacities and contribution to Plaintiffs' injuries and damages, at this time, are unknown to Plaintiffs.  Plaintiffs are informed and believe and thereon allege that at all times herein mentioned each defendant sued herein as DOES 1 through 10 was the agent, servant, and/or employee of his, her or its co-defendants, and in doing the things hereinafter mentioned was acting in the scope of his, her or its authority as such agent, servant, and/or employee, and with the direction, permission, and/or ratification of his, her or its co-defendants; and that each of said fictitiously named defendants, whether an individual, corporation, association, governmental entity, or otherwise, is in some way liable or responsible to the Plaintiffson the facts hereinafter alleged, and caused injuries and damages proximately thereby as hereinafter alleged.  At such time as any such DOE defendants' true name and involvement becomes known to Plaintiffs, plaintiffs will amend this complaint to insert such true name and capacity.

12.     The use of the collective term "defendant" or "defendants" in any of the allegations in this complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the named defendants, but also all defendants designated as DOES 1 through 100, inclusive, as though the term "defendants" was followed in each and every instance throughout this complaint with the phrase "and each of them jointly and severally, including all named defendants included herein and sued under the fictitious names of DOES 1 through 100, inclusive."

13.     Plaintiffs are informed and believe and thereon allege that, at all relevant times, each defendant was the agent, servant, employee, partner, and/or joint venturer of each of the remaining defendants, and that in doing the things herein alleged such defendants acted within the course and scope of said agency, service, employment partnership, and/or joint venture.  Additionally, plaintiffs are informed and believe and thereon allege that at all relevant times each defendant acted pursuant to the custom and policy of defendants, and each of them, and that the acts and conduct of

defendants alleged herein were authorized, directed, ratified, and/or approved by each other

defendant. Additionally, plaintiffs are informed and believe and thereon allege that each agent,

servant, employee, partner, and/or joint venturer was at all times vested with the authority from each

other defendant to exercise final decision-making authority for each other defendant.

## ALLEGATIONS COMMON TO ALL COUNTS / CAUSES OF ACTION

14.    Plaintiffs are informed and believe and thereon allege that on or about September 7,

2013, on or about 11:35 p.m., LAPD officers engaged in a vehicular pursuit of a 1999 Chevrolet

Suburban because said officers believed the decedent to avoid eye-contact with the officers.

Thereafter, additional ground units as well as an LAPD-air unit joined in the pursuit, tracking the

aforementioned vehicle.  The pursuit came to an end at or near the vicinity of Jim Gilligan Park, in

the City of Los Angeles.  Upon termination of car pursuit, three individuals, including Decedent,

fled the vehicle on foot.

15.    Plaintiffs are informed and believe and thereon allege that the LAPD air-unit

directed the ground units toward the Decedent and another occupant of the aforementioned

Suburban.  After a significant amount of time from the pursuit had passed, Decedent jumped over a

gate and entered the street where the Defendants and each of them were stationed.  Decedent was

not able to control himself at time of landing and fell to the ground.  Decedent was unarmed laying

on the ground and posed no imminent threat of danger to Defendants or anyone else.  However

upon observing the Decedent, multiple police officers unprovoked and/or without justification

began inflicting significant physical punishment and assault upon him and his person, to wit,

officers proceeded to kick and punch the Decedent while he was still on the ground.

16.    After restraining and arresting the Decedent, officers intentionally, despicably,

maliciously, and in reckless disregard of the safety of the public ignored Decedent's cry for medical

attention – Decedent was in visible and palpable need for immediate and urgent medical help.

Plaintiffs are informed and believe that in particular Decedent was complaining of difficulty

breathing in response to which Defendants intentionally, despicably, maliciously, and in conscious

disregard of LAPD procedures and the rule of law disregarded Decedent's condition and failed to

provide any medical care.   As a result, it appears that Decedent suffocated to death and/or was

1  painfully deprived of oxygen immediately prior to his death.  Plaintiffs are further informed and

2  believe that the aforementioned set of circumstances was taped and/or video recorded by the

3  Defendants and each of them.

4         17.     Plaintiffs are informed and believe and thereon allege that Defendants, and each of

5  them, after arresting Decedent, took him to LAPD Southwest Community Police Station

6  ("Station").  There the Decedent was stripped down to his undergarment, and placed in a holding

7  cell.  Decedent continued to suffer from medical complications, to wit, difficulty breathing and

8  inability to stand on his own.  However, Defendants, and each of them, continued to willfully,

9  maliciously, despicably, and in conscious disregard of decedent's rights and well-being failed to

10  provide him with any medical care.  This willful, wanton, and/or reckless failure of Defendants, and

11  each of them, and/or Defendants use of excessive force directly and proximately caused the

12  premature death of the 26-year-old Jorge Luis Azucena.

13         18.     While Decedent was taking his last breaths, plaintiff DELMY visited the LAPD

14  Southwest Community Police Station to inquire into decedent's whereabouts.  DELMY visited the

15  Station because hours earlier the Decedent had sent her a cellular text message asking for a picture

16  of them together to rodomontade about his new family to his friends.  After receiving the picture

17  through multimedia messaging, the Decedent responded by telling DELMY that he would be home

18  in about ten minutes.  When half an hour passed and the Decedent had not gotten home, DELMY

19  became worried and began contacting the Decedent's cell phone to no avail.  DELMY was

20  extremely concerned because she knew the Decedent to be most punctual.  She frantically began

21  contacting all their friends and/or acquaintances.  One of their friends and/or acquaintances told

22  DELMY that the Decedent was arrested and taken into custody by LAPD.

23         19.     DELMY after learning of the area where she was told the decedent to have been

24  arrested, rushed to the Southwest Station to inquire into the whereabouts of Decedent. Plaintiffs are

25  informed and believe and thereon allege that when DELMY contacted Defendants to inquire about

26  Decedent, Defendants and each of them had identified Decedent through his identification card(s) in

27  his possession and/or other means of identification.  However, Defendants all the while knowing

28  that they had Decedent in their custody, intentionally misinformed DELMY that they had no

-7-
SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL
Case No. CV14-6231 RGK-FFM

Martinian
& Associates, Inc.
L a w y e r s

1   information on Decedent's whereabouts.   While knowing that the Decedent was taking the last

2   breaths of his short life, the Defendants told DELMY that adults could go missing and that if the

3   Decedent felt like it he could come home and if he didn't then that would be fine too. Defendants

4   intentionally failed to show the dignities to the deceased and his survivors, namely DELMY, as

5   required under the common law of the State of California, by depriving DELMY an opportunity to

6   meet her husband's body within timely manner.

7          20.     Still not knowing the condition of decedent, DELMY visited the LAPD Southeast

8   Community Police Station, where she was told that Defendants had no information about the

9   Decedent. DELMY began searching and visiting each and every nearby hospital, and hospitals in

10   the greater Los Angeles metropolitan area. For the next four to five days, DELMY again and again

11   visited the Southwest Station to inquire into the whereabouts of the Decedent. Each time the

12   Defendants told her that they were not aware of the Decedent's whereabouts, all the while knowing

13   that he had passed away while in Defendants' custody.   Three days after decedent had passed while

14   in the custody of defendants, DELMY, left with no options and no hope to find her loved one, asked

15   the Southwest Station to file a missing person report.   There, Defendants told her that in order for

16   her to do so, she should wait in the Station, until they have answered the concerns of each and every

17   individual in the Station (even though they had come in after her) before they could attend to

18   her,which Defendants told her should take approximately 5 hours.   Under the stress of missing her

19   husband the five hours proved too long for DELMY. Thus she visited the Southeast Station instead

20   where she filed the missing person report.

21          21.     On or about September 10, 2013, approximately four days from when DELMY last

22   heard from the Decedent, she took it upon herself to visit the scene of the incident where the

23   Decedent was arrested.   There, she began asking anyone she could find if they had any information

24   about the Decedent.   Within minutes, a circle of people surrounded DELMY, informing her that the

25   Decedent was taken into custody by officers belonging to Southwest Station.   Determined to get

26   some answers for her missing husband, DELMY went to the Stationfor the third time.   Again

27   Defendants told her that they do not have any information about the Decedent.   However, this time,

28   DELMY was not about to take the assertions of the Defendants as true.   DELMY told Defendants

that she had seen a video recording of the Defendants taking the Decedent into custody. Defendants' employee, left with no options, told DELMY to take a seat until Detectives could come to talk to her. Still Defendants had not informed DELMY of the whereabouts of the Decedent, all the while knowing that he had passed away days ago while in their custody.

22.    After some passage of time, currently unidentified defendants who represented themselves as detective(s) and officers from the Internal Affairs came to visit DELMY.  There, Defendants told DELMY that they have had a person in custody since September 7, 2013, that might fit the description of the Decedent.  Defendants again refused and failed to bring closure to the Plaintiffs ongoing search of their missing dad and husband, in willful and wanton disregard of the truth – that they had the Decedent in custody and that they had identified him pursuant to the state issued identification cards that he had in his possession at time of arrest and/or other means of identification.

23.    Plaintiffs are required to comply with Section 900 through 915.4 of the California Government Code (the claims statutes,) and Plaintiffs have complied with applicable claims statutes by filing and properly serving a Government Tort Claim against City of Los Angeles on or about December 18, 2013, within six (6) months of the date of discovery of incident that gives rise to this lawsuit, presenting all facts and claims then known and/or reasonably knows to plaintiff concerning the events referenced herein. Defendants on or about April 15, 2014, denied the claim in its entirety, and this action is timely commenced within six (6) months of such denial.

## CAUSES OF ACTION

### COUNT I

**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Use of Excessive Force)**
**(By All Plaintiffs Against All Defendants)**

24.    Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

25.    Plaintiffs bring this claim for relief in the capacity as the successors-in-interest and personal representatives of the decedent.

26.    The foregoing claim for relief arose in decedent's favor, and decedent would have

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL
Case No. CV14-6231 RGK-FFM

been the plaintiff with respect to this claim for relief had he lived.

27.     Defendants, acting under color of state law, deprived the decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to those enumerated in and secured by the Fourth Amendment to the Constitution, by subjecting the decedent to excessive force and thereafter denying him any and all medical care while detained.

28.     The wrongful acts alleged herein above of defendant police officers were a cause of the death of the Decedent.

29.     As a proximate result of the foregoing wrongful acts of Defendants, and each of them, the Decedent sustained general damages, including pain and suffering, and a loss of enjoyment of life and other hedonic damages, in an amount in accordance with proof.

30.     This violation of Decedent and Plaintiffs' Fourth and Fourteenth Amendment rights occurred as a result of a widespread and settled custom, usage, practice and/or policy in the City of Los Angeles to hide and cover the misdeeds of fellow LAPD officers. The cover-up actions of superiors and failures to take corrective action against errant LAPD officers is sufficient to state a cause of action against Defendant City of Los Angeles and meets the standards for municipal liability set forth in <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) and <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 746-47 (1st Cir. 1990).

31.     In doing the foregoing wrongful acts, defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of the Decedent. The wrongful acts, and each of them, were willful, intentional, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

32.     Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorney's fees and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988 are entitled to recovery of said fees.

///

///

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

**COUNT II**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Deprivation of the Rights of Plaintiffs to Familial Relationship with the Decedent)**
**(By All Plaintiffs Against All Defendants)**

33.    Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

34.    Defendants, acting under color of state law, deprived Plaintiffs of their right to a familial relationship without due process of law by Defendants' use of unjustified force, causing injuries which resulted in Decedent's death, and thereafter willfully denying the Decedent any and all medical care, all without provocation, all in violation of rights, privileges, and immunities secured by the First and Fourth Amendments to the United States Constitution.

35.    As result of the foregoing wrongful acts of Defendants, and each of them, Plaintiffs sustained general damages, including grief, emotional distress and pain and suffering and loss of comfort and society, and special damages, including loss of support, in an amount in accordance with proof.

36.    This violation of Decedent and Plaintiffs' Fourth and Fourteenth Amendment rights occurred as a result of a widespread and settled custom, usage, practice and/or policy in the City of Los Angeles to hide and cover the misdeeds of fellow LAPD officers. The cover-up actions of superiors and failures to take corrective action against errant LAPD officers is sufficient to state a cause of action against Defendant City of Los Angeles and meets the standards for municipal liability set forth in <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) and <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 746-47 (1st Cir. 1990).

37.    In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the Constitutional rights of Plaintiffs.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant in an amount adequate to punish the wrongdoers and deter future misconduct.

38.    Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorney's fees and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988 are

entitled to recovery of said fees.

**COUNT III**

**Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Fourteenth Amendment Deprivation of Liberty Interest Without Due Process of Law)**
**(By All Plaintiffs Against All Defendants)**

39.    Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

40.    The Fourteenth Amendment to the United States Constitution, as interpreted by the United States Supreme Court[1] provides that those acting under the color of law have an affirmative obligation to provide adequate medical care and treatment to detainees.  Such failure to provide care to a detainee is impermissible as it constitutes a form of punishment imposed on persons not convicted of a crime.

41.    Defendants knew of and disregarded an excessive risk to Decedent's safety by failing to provide him with medical care and treatment.  Decedent from the moment of his detention repeatedly informed the Defendants that he was unable to breath.  Defendants admit such facts and through various publications state that Decedent immediately informed the Defendants that he was suffering from asthma and was unable to breath.  Defendants observed and disregarded Decedent's difficulty to breath, and the fact that Defendant was unable to stand on his own. In return Defendants told the Decedent that "if you can talk you can breathe."  When Defendants were carrying Decedent toward his holding cell, they observed that Decedent was unable to stand on his own, and instead of providing him with adequate health care they threw him face down in the holding cell. Accordingly, Defendants were deliberately indifferent to the serious medical complications (to wit inability to breathe) of the Decedent Azucena.

42.    Defendants, by depriving Decedent of medical care and treatment over the long span of time from his detention until hours later in his holding cell, acted with deliberate indifference to the welfare of Decedent. Specifically, there was a substantial risk of harm to Decedent's health by being deprived of life-saving medical care and treatment; and Defendants acted with deliberate

---

[1] Bell v. Wolfish, 441 U.S. 520 (1979).

-12-
SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

indifference to that risk because they knew of Decedent's cardiovascular complications and knew of his deteriorating conditions to the extent he could not stand on his own feet – yet declined to provide any medical care or treatment to Decedent Azucena.

43.     Defendants, by their actions, have denied Decedent Azucena of the rights and protections provided by the Fourteenth Amendment of the United States of America.

44.     This violation of Decedent and Plaintiffs' Fourth and Fourteenth Amendment rights occurred as a result of a widespread and settled custom, usage, practice and/or policy in the City of Los Angeles to hide and cover the misdeeds of fellow LAPD officers. The cover-up actions of superiors and failures to take corrective action against errant LAPD officers is sufficient to state a cause of action against Defendant City of Los Angeles and meets the standards for municipal liability set forth in <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978) and <u>Landrigan v. City of Warwick</u>, 628 F.2d 736, 746-47 (1st Cir. 1990).

45.     As a further and proximate result of Defendants' violations of the Fourteenth Amendment, Plaintiffs have suffered the greatest of the harms in form of loss of life of their husband/father.

46.     In light of Defendants' willful, knowing, intentional, and egregious violations of the law against the Decedent and their reckless and callous indifference to the rights of the Decedent and Plaintiffs, Plaintiffs seek an award of punitive and exemplary damages in an amount according to proof at trial.

47.     Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorney's fees and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988 are entitled to recovery of said fees.

### COUNT IV

**Conspiracy to Violate Civil Rights Pursuant to Title 42 U.S.C. § 1985**
**(Conspiracy to Deprive Decedent and Plaintiffs of Liberties and Privileges of Fourth and Fourteenth Amendment)**
**(By All Plaintiffs Against All Defendants)**

48.     Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

49.     In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs and Decedent of certain constitutionally protected rights under the Fourth, and Fourteenth Amendments to the Constitution of the United States including, but not limited to (i) the right to be free from unreasonable searches and seizures; and (ii) the right not to be deprived of liberty without due process of law; (iii) the right to be free from excessive use of force by persons acting under color of state law.

50.     The conduct of each Defendant violated the rights of Decedent to be free from excessive use of force by persons acting under color of law as guaranteed by Fourth Amendment to the Unites States Constitution.  The conduct of each Defendant, also, violated the rights of Plaintiffs to be free from deprivation of rights to a familial relation with the Decedent, and violated the rights of Decedent to be provided with adequate health care and/or treatment while detained, as guaranteed by the Fourteenth Amendment to the United State Constitution.  As such each Plaintiff is entitled to recover damages pursuant to 42 U.S.C. 1983 (for further discussion of circumstances of such deprivations of rights please refer to Counts one through three, *supra*.)

51.     The conduct of the Defendants which violated Decedent and Plaintiffs' Fourth and Fourteenth Amendment rights included a conspiracy by two or more of the defendants to violate Decedent and Plaintiffs' Fourth and Fourteenth Amendment rights and deprive him of constitutional rights or privileges, in further violation of 42 U.S.C. §1985(3), which states in relevant part:

> "If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person ... of the equal protection of the laws, or of equal privileges and immunities under the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." (R.S. §1980.)

52.     Defendants BECK, RICHARDSON, and other unidentified and unknown officers, conspired to violate Plaintiffs' constitutional right to be free from use of excessive force, to be

Martinian
& Associates, Inc.
L a w y e r s

provided with adequate medical care, and to be free from deprivation of familial relation, when they misrepresented events, facts, results of investigations.  It is believed that at least one of the unidentified officers involved in this incident, has since been discharged of his duties due to intentional misrepresentations to CITY's own investigators.

53.     Specifically, during the time span of several days when DELMY visited the STATION desperately searching for Decedent, various unidentified officer defendants made the same and/or extremely similar conscious misrepresentations to DELMY including but not limited to:  telling her there was no information available regarding Decedent's whereabouts; telling her it would take approximately five hours to file a missing person's report and likely would not be filed the same day; telling her adults go missing regularly and she should probably go home too; telling her there was no way to give her any information regarding Decedent.  The similarity in each of the Unknown Officers' remarks again and again to DELMY over a period of days is sufficient evidence of an agreement and/or plan in violating Plaintiffs' constitutional rights.

54.     Furthermore, numerous unidentified officer defendants acted in concert over the time span of hours when faced with a lifeless Decedent, begging for medical help, by telling him that if he could talk he could breathe and to further not provide him with any medical care or treatment.  The similarity in each of the Defendants' remarks and conduct, repeated again and again during a significant and crucial span of time is sufficient evidence of an agreement and/or plan to violate Plaintiffs' and Decedents' constitutional rights.

55.     This violation of Decedent and Plaintiffs' Fourth and Fourteenth Amendment rights occurred as a result of a widespread and settled custom, usage, practice and/or policy in the City of Los Angeles to hide and cover the misdeeds of fellow LAPD officers. The cover-up actions of superiors and failures to take corrective action against errant LAPD officers is sufficient to state a cause of action against Defendant City of Los Angeles and meets the standards for municipal liability set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978) and Landrigan v. City of Warwick, 628 F.2d 736, 746-47 (1st Cir. 1990).

56.     During the time of these events, Defendant CHIEF CHARLIE BECK was the top supervisory officer in the LAPD. As such, Defendant CHIEF CHARLIE BECK had primary

Martinian
& Associates, Inc.
Lawyers

responsibility to set policy within LAPD, and make sure that the custom, usage, and practice within LAPD conformed to established policy. Therefore, Defendant CHIEF BECK is liable for conspiring to violate Decedent and Plaintiffs' civil rights because by covering-up and/or failing to take corrective action against the LAPD officers who actually carried out the conspiracy against Decedent and Plaintiffs, Defendant CHIEF BECK ratified and became part of said conspiracy.

57.     Defendants, and each of them, conspired with one another within the course and scope of said conspiracy to fabricate charges of criminal activity by Decedent, fabricate medical conditions, and misrepresent the order and manner of the events for the purpose of depriving Decedent and Plaintiffs of their constitutional rights under 42 U.S.C. §§ 1983 & 1985 and the Fourth and Fourteenth Amendments of the United States Constitution, including, but not limited to, Decedent and Plaintiffs' right to equal protection of the laws.

58.     The conduct of each Defendant violated the right of Decedent and Plaintiffs' to their liberty and to free from use of excessive force, as guaranteed by the Constitution and laws of the United States and the State of California, including Article I, §§ 1, 7 and 13, of the California Constitution.

59.     As a direct and proximate cause of the aforementioned acts of Defendants, Plaintiffs were injured as set forth in paragraphs above, thereby entitling Plaintiffs to damages under 42 U.S.C. §§ 1983 and 1985(3).

60.     As a direct and proximate cause of the aforementioned actions of Defendants, PLAINITF was injured as set forth above, thereby entitling PLAINITFF to damages under Cal. Civil Code § 52.1.

61.     All acts or omissions alleged to have been engaged in by any individual Defendants are alleged to have been engaged in with evil motive and intent, and/or in callous, reckless, and wanton disregard to Decedent and Plaintiffs' rights. The acts of said Defendants, and each of them, were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to each of the individual Defendants.

62.     Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorney's fees and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988 are

1  entitled to recovery of said fees.

2  **COUNT V**

3  **Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983**
**(Monell/Failure To Adequately Train and Supervise)**
4  **(By All Plaintiffs Against CITY, BECK, RICHARDSON, and DOES 1-10)**

5  63.    Plaintiffs incorporate herein each and every allegation contained in all prior

6  paragraphs of this complaint as if alleged fully herein.

7  64.    Plaintiffs bring this claim for relief in the capacity as the successors-in-interest and

8  personal representatives of the Decedent.

9  65.    Defendants, and each of them, knowingly and with gross negligence, maintain and

10  permit official policies and customs which allow the occurrence of the types of wrongs set forth

11  hereinabove, all in deliberate indifference to the Constitutional rights of citizens.

12  66.    At the time of these constitutional violations by said LAPD personnel Defendant

13  CITY had in place, and had ratified policies, procedures, customs, and practices which permitted

14  and encouraged their peace officers to unjustifiably, unreasonably, and in violation of the Fourth

15  and Fourteenth Amendments, falsify evidence, submit false and misleading criminal reports, and

16  commit perjury, and use excessive force in situations where such force is not necessary, reasonable

17  or legal against unarmed suspects. These policies, customs, practices, also called for or permitted

18  the unreasonable or excessive use of force against members of the local public as well as deprive

19  members of the public, like Decedent, of necessary and life-sustaining medical care.

20  67.    These policies and customs include, but are not limited to, the deliberately

21  indifferent training of its law enforcement officers related to the use of force, the contact with

22  detainees in the field and the regard for the personal safety of a detainee or arrestee.  The City of

23  Los Angeles's lack of training and deliberate indifference to individual rights places individuals in

24  dangerous situations and cause the use of excessive and unnecessary force.  Further, the City's

25  ratification of police misconduct, along with the failure to conduct adequate investigations of

26  misconduct leads to the violations of the Plaintiffs' and the Decedent's Constitutional rights.

27  68.    Said policies, procedures, customs, and practices also called for CITY and the

28  LAPD not to discipline, prosecute, or objectively and/or independently investigate or in any way

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

Martinian
& Associates, Inc.
L a w y e r s

deal with or respond to known incidents, complaints of excessive force, falsification of evidence, the preparation of false police reports to justify such wrongful conduct and the giving of false testimony in trial to cover-up and conceal such wrongful conduct by officers of the LAPD. CITY also failed to objectively and/or independently investigate, or in any way deal with or respond to claims and lawsuits made as a result of such misconduct.

69.    Said policies, procedures, customs, and practices called for said Defendants, and each of them, by means of inaction and cover-up, to encourage an atmosphere of lawlessness within the LAPD; to encourage their officers to believe that excessive force against suspects was permissible; and to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications.

70.    Said policies, procedures, customs, and practices evidenced a deliberate indifference to the violations of the constitutional rights of the present Plaintiffs.

71.    This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs, and practices in light of prior knowledge by said Defendants of similar incidents, including but not limited to:

      a.    Deliberate indifference to the civil rights victims of the LAPD excessive force was evidenced by the failure to identify and investigate instances of excessive force against suspects, falsification of evidence, submission of false police reports, and perjury, and by said Defendants' failure to adequately train and more closely supervise or re-train officers and/or discipline or recommend prosecution of those officers who in fact improperly used excessive force against suspects, falsified evidence, tampered with evidence, submitted false and misleading police reports, and/or committed perjury;

      b.    Other systemic deficiencies of said Defendants which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the officers of the LAPD;

      c.    Said Defendants also maintained a system of grossly inadequate training regarding the collection of information and evidence, the preparation of arrest

and investigative reports, and the presentation of false police testimony in Court;

d.  Deliberate indifference to the civil rights of suspects and other victims of the LACSD excessive force was also evidenced by said Defendants' failure to implement an officer discipline system which would conduct meaningful and independent investigations of citizen complaints of falsified evidence, evidence tampering, authoring and filing of false and misleading police reports, and the presentation of false testimony at trial.

72.    The foregoing acts, omissions, and systemic deficiencies are the policies and customs of Defendant CITY and caused the other Defendants to be unaware of, or intentionally overlook and ignore, the rules and laws governing the permissible use of force, including the use of force against suspects, the falsification of evidence or the tampering with evidence, the submission of false police reports, and the commission of perjury in a court proceeding.

73.    The foregoing acts, omissions, and systemic deficiencies are policies and customs of said Defendants and such caused, permitted, and/or allowed under official sanction, the other Defendants to believe that their use of police force against suspects is entirely within the discretion of the officer and that improper and unlawful use of force, evidence falsification, filing of false and misleading police reports, and the commission of perjury would not be objectively, thoroughly, and/or properly investigated, all with the foreseeable result that Defendant's officers would falsify evidence, submit false and misleading police reports, and commit perjury, and use excessive force in situations where such force is not necessary, reasonable or legal, and thereby violate the civil rights of the citizens of this state with whom said officers would come into contact with.

74.    In spite of Plaintiffs' filing of a claim, the City of Los Angeles failed to investigate, or take any action in preserving Plaintiffs' rights, or verify misconduct and discipline officers for the misconduct.  Plaintiffs are informed and believe, and thereon allege, that the customers and policies were the moving force behind the violations of Plaintiffs' rights.  Based upon the principles set forth in Monell v. New York City Dept. of Social Services, the CITY is liable for all of the injuries sustained by Plaintiffs as set forth above.

75.    As a direct and legal result of the aforementioned acts of said Decedents, and each of

them, Plaintiffs suffered the gravest of harm – loss of husband/father.

76.     Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorney's fees and will continue to incur attorneys' fees, and pursuant to 42 U.S.C. § 1988 are entitled to recovery of said fees.

## COUNT VI

### Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983
### (Monell – Deprivation of the Rights of Plaintiffs to Familial Relationship with the Decedent)
### (By All Plaintiffs Against All Defendants)

77.     Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

78.     Defendants, knowingly and with gross negligence, maintain and permit official policies and Defendants, and each of them, knowingly and with gross negligence, maintain and permit official policies and customs which allow the occurrence of the types of wrongs set forth hereinabove, all in deliberate indifference to the Constitutional rights of citizens.

79.     At the time of these constitutional violations by said LAPD personnel Defendant CITY had in place, and had ratified policies, procedures, customs, and practices which permitted and encouraged their peace officers to unjustifiably, unreasonably, and in violation of the Fourth and Fourteenth Amendments, falsify evidence, submit false and misleading criminal reports, and commit perjury, and use excessive force in situations where such force is not necessary, reasonable or legal against unarmed suspects. These policies, customs, practices, also called for or permitted the unreasonable or excessive use of force against members of the local public.

80.     These policies and customs include, but are not limited to, the deliberately indifferent training of its law enforcement officers related to the use of force, the contact with detainees in the field and the regard for the personal safety of a detainee or arrestee.  The City of Los Angeles's lack of training and deliberate indifference to individual rights places individuals in dangerous situations and cause the use of excessive and unnecessary force.  Further, the City's ratification of police misconduct, along with the failure to conduct adequate investigations of misconduct leads to the violations of the Plaintiffs' and the Decedent's Constitutional rights.

81.     Said policies, procedures, customs, and practices also called for CITY and the

Martinian
& Associates, Inc.
L a w y e r s

-20-
SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

LAPD not to discipline, prosecute, or objectively and/or independently investigate or in any way deal with or respond to known incidents, complaints of excessive force, falsification of evidence, the preparation of false police reports to justify such wrongful conduct and the giving of false testimony in trial to cover-up and conceal such wrongful conduct by officers of the LAPD. CITY also failed to objectively and/or independently investigate, or in any way deal with or respond to claims and lawsuits made as a result of such misconduct.

82.     Said policies, procedures, customs, and practices called for said Defendants, and each of them, by means of inaction and cover-up, to encourage an atmosphere of lawlessness within the LAPD; to encourage their officers to believe that excessive force against suspects was permissible; and to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications.

83.     Said policies, procedures, customs, and practices evidenced a deliberate indifference to the violations of the constitutional rights of the present Plaintiffs.

84.     This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs, and practices in light of prior knowledge by said Defendants of similar incidents, including but not limited to:

    a.   Deliberate indifference to the civil rights victims of the LAPD excessive force was evidenced by the failure to identify and investigate instances of excessive force against suspects, falsification of evidence, submission of false police reports, and perjury, and by said Defendants' failure to adequately train and more closely supervise or re-train officers and/or discipline or recommend prosecution of those officers who in fact improperly used excessive force against suspects, falsified evidence, tampered with evidence, submitted false and misleading police reports, and/or committed perjury;

    b.   Other systemic deficiencies of said Defendants which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the officers of the LAPD;

    c.   Said Defendants also maintained a system of grossly inadequate training

regarding the collection of information and evidence, the preparation of arrest and investigative reports, and the presentation of false police testimony in Court;

    d.   Deliberate indifference to the civil rights of suspects and other victims of the LACSD excessive force was also evidenced by said Defendants' failure to implement an officer discipline system which would conduct meaningful and independent investigations of citizen complaints of falsified evidence, evidence tampering, authoring and filing of false and misleading police reports, and the presentation of false testimony at trial.

85.    The foregoing acts, omissions, and systemic deficiencies are the policies and customs of Defendant CITY and caused the other Defendants to be unaware of, or intentionally overlook and ignore, the rules and laws governing the permissible use of force, including the use of force against suspects, the falsification of evidence or the tampering with evidence, the submission of false police reports, and the commission of perjury in a court proceeding.

86.    The foregoing acts, omissions, and systemic deficiencies are policies and customs of said Defendants and such caused, permitted, and/or allowed under official sanction, the other Defendants to believe that their use of police force against suspects is entirely within the discretion of the officer and that improper and unlawful use of force, evidence falsification, filing of false and misleading police reports, and the commission of perjury would not be objectively, thoroughly, and/or properly investigated, all with the foreseeable result that Defendant's officers would falsify evidence, submit false and misleading police reports, and commit perjury, and use excessive force in situations where such force is not necessary, reasonable or legal, and thereby violate the civil rights of the citizens of this state with whom said officers would come into contact with.

87.    In spite of Plaintiffs' filing of a claim, the City of Los Angeles failed to investigate, or take any action in preserving Plaintiffs' rights, or verify misconduct and discipline officers for the misconduct. Plaintiffs are informed and believe, and thereon allege, that the customers and policies were the moving force behind the violations of Plaintiffs' rights. Based upon the principles set forth in Monell v. New York City Dept. of Social Services, the CITY is liable for all of the injuries sustained by Plaintiffs as set forth above.

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

88.     In acting as alleged herein, Defendants, and each of them, caused Jorge L. Azucena's demise and severe physical and emotional injuries to surviving Plaintiffs, thereby causing Plaintiffs to be damaged in an amount to be determined at the time of trial.

89.     Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorneys' fees and will continue to incur attorneys' fees, and pursuantto 42 U.S.C. § 1988 are entitled to recovery of said fees.

## COUNT VII

### Wrongful Death and Survival Damages – Negligence
### (By All Plaintiffs Against All Defendants)

90.     Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

91.     Defendants, acting within the scope of their duties as City of Los Angeles, willfully, wantonly, and in conscious disregard of life of Jorge Luis Azucena inflicted fatal bodily injury on him and thereafter failed to provide timely medical care.

92.     Defendant City of Los Angeles is hereby liable for the acts, omissions and conduct of its employees, including Defendants herein, whose negligent conduct was acause in the death of the decedent, pursuant to *Cal. Government Code* §815.2.

93.     Plaintiffs filed timely claims pursuant to *Cal. Government Code* §910 *et. seq*. Those claims having been rejected within the past six months, this action is timely.

94.     Plaintiffs are proper parties with standing pursuant to *Cal. Civ. Proc. Code*§ 377.60, hereby pursue their remedies for wrongful death against Defendants, and each of them, including pecuniary loss and other compensable injuries resulting from the loss of the society, comfort, attention, services, and support of the decedent.

95.     Decedent was a faithful and dutiful provider, husband and father and his loss has and will continue to cause great and severe damages to Plaintiffs DELMY, D.G.F., and A.C.F. all in an amount according to proof at the time of trial.

96.     As a further direct result of the acts, omissions, negligence conduct and/orreckless disregard for the safety of decedent, Defendants, and each of them, Plaintiffs have incurred funeral

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

and burial expenses in an amount according to proof at the time of trial.

97.     On or about September 7, 2013, as a direct result of the negligent and careless conduct of the above-named defendants, and each of them, Plaintiffs' decedent was forced to endure severe mental and physical anguish and fear of impending death, and he ultimately suffered severe physical injuries which caused his death.  As a result of the foregoing, DELMY, as one of his heirs and his successor in interest hereby asserts a survivor's claim on behalf of him, deceased, pursuant to California Code of Civil Procedure sections 377.10, 377.20, 377.30, *et seq.* and based upon all other applicable statutes and case law and succeed to causes of action that might have been brought by the Decedent.  Plaintiff has or will file a declaration under penalty of perjury as required by California Code of Civil Procedure section 377.32.

98.     As a further direct result of the acts, omissions, negligence conduct and/or reckless disregard for the safety of decedent of Defendants, and each of them, Plaintiffs have incurred medical bills and other incidental costs and expenses, in an amount according to proof.

**COUNT VIII**

**Violation of California Civil Code § 52.1**
**(By All Plaintiffs Against All Defendants)**

99.     Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

100.    Defendants, acting within the scope of their duties as City of Los Angeles, willfully, wantonly, and in conscious disregard of life of Jorge Luis Azucena inflicted fatal bodily injury on him and thereafter failed to provide timely medical care.

101.    Defendant City of Los Angeles is hereby liable for the acts, omissions and conduct of its employees, including Defendants herein, whose negligent conduct was acause in the death of the decedent, pursuant to *Cal. Government Code* §815.2.

102.    Plaintiffs filed timely claims pursuant to *Cal. Government Code* §910 *et. seq*. Those claims having been rejected within the past six months, this action is timely.

103.    Plaintiffs are proper parties with standing as successors-in-interest and on behalf of the decedent pursue the claim of the decedent based on a violation of hisrights.

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

104.    The conduct of Defendants constituted interference by threats, intimidation, or coercion, or attempted interference, with the exercise of enjoyment by decedent Jorge Luis Azucena of rights secured by the Constitution of laws of the United States, or secured by the Constitution or laws of the State of California, including interferencewith decedent's rights to be secure in his person and free from the use of excessive forceunder the Fourth Amendment and Cal. Const. Art. 1 sec. 13 as well as California Civil Code § 43, and the right of protection from bodily restraint and harm.

105.    As a direct cause of Defendants' conduct, the decedent's rights pursuant to *California Civil Code* §52.1 were violated, causing injuries and damages in an amount tobe proved at the time of trial.

106.    Due to the conduct of Defendants, and each of them, Plaintiffs have been required to incur attorneys' fees and will continue to incur attorneys' fees, and pursuantto *California Civil Code* § 52.1 are entitled to recovery of said fees.

### COUNT IX

### Intentional Infliction of Emotional Distress
### (By Delmy Elizabeth Fuentes Against All Defendants)

107.    Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

108.    DELMY for days, starting from time of the arrest of Decedent until days after his passing, visited Southwest Division and inquired about her husband's whereabouts.  For days Defendants, aware of the marital relation between DELMY and Decedent, knowingly, intentionally, and/or willfully misinformed DELMY of her husband's whereabouts even though they fully knew that they had Decedent and/or his remains in custody.  Defendants also knowingly, intentionally, and/or willfully failed to disclose the fact that DELMY's husband had died while in custody.  Defendants instead of disclosing Decedent's passing, intentionally and willfully told DELMY that her husband could be disgruntled with her and that's why he chose to go missing – after all, Defendants told DELMY, adults could go missing if they chose to.

109.    Defendants' acts and omissions were intentional andwere done with a desire to

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL
Case No. CV14-6231 RGK-FFM

cause and/or a reckless disregard of the high probability of causing DELMY to suffer emotional distress.Defendants exhibited a desire to cause and/or a reckless disregard for the probability of causing DELMY severe emotional distress by their refusal to disclose Decedent's whereabouts while in custody, denial of opportunity for timely access to remains of her husband, and cover-up of the fact that Decedent had died while in custody for days.Indeed, such conduct caused DELMY to suffer from severe emotional distress.

110.    Defendants knew or should have known of DELMY's vulnerability as a spouse of a missing husband.

111.    Defendants' acts and omissions including but not limited to refusal to disclose Decedent's whereabouts while in custody, denial of opportunity for timely access to remains of Decedent, and cover-up of the fact that Decedent had died while in custody for days are outrageous acts that exceeds all bounds of decency tolerated by our civilized society.

112.    As a proximate result of the aforementioned outrageous acts of the Defendants, and each of them, DELMY has suffered and experienced extreme mental anguish and severe emotional distress.  As a direct and proximate result of the outrageous acts of Defendants, and each of them, DELMY suffered and continues to suffer from great mental and emotional pain and suffering. Plaintiff is informed and believes, and thereupon alleges, that such injuries have resulted in and will continue to result in permanent and degenerative disabilities to plaintiff, all to their general damage in an amount which will be stated according to proof at the trial in this case.

113.    Defendants' conduct as alleged herein, including but not limited to defendants' intentional and wilful refusal to inform DELMY of her husband's whereabouts, was malicious and oppressive, in that it was conduct carried on by the Defendants in willful and conscious disregard of DELMY's rights, and it subjected DELMY to cruel and unjust hardship.  Plaintiff is therefore entitled to recover punitive damages against such Defendants in this case.

///

///

///

///

# COUNT X

### Violation of California Government Code § 845.6
### (By All Plaintiffs Against All Defendants)

114.    Plaintiffs incorporate herein each and every allegation contained in all prior paragraphs of this complaint as if alleged fully herein.

115.    California Government Code § 845.6 read s in part: "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

116.    Decedent Azucena is a "prisoner" within the meaning of California Government Code § 845.6.  Specifically, California Government Code § 844 states: "As used in this chapter, "prisoner" includes an inmate of a . . . jail . . .. For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law, upon his or her initial entry into . . . jail . . . pursuant to penal processes."  Decedent Azucena after his detention was taken to the LAPD Southwest Division for purposes of booking. As such Decedent Azucena is a prisoner within the meaning of the California Government Code § 845.6.

117.    Defendants knew or had reason to know that Decedent was in need of immediate medical care and the Defendants failed to take reasonable action to summon such medical care or provide that care resulting in decedent's death and a violation of California State Law and specifically California Government Code section 845.6.

118.    This conduct proximately caused damage and injuries to Decedent and Plaintiffs. Defendant CITY is vicariously liable for the conduct of the individual Defendants. The actions of the individual Defendants were malicious, reckless and/or accomplished with a conscious disregard of Decedent and Plaintiffs' rights, thereby entitling Plaintiffs to an award of exemplary and punitive damages according to proof and as permitted by law.

///

///

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL

Case No. CV14-6231 RGK-FFM

**PRAYER**

(ON ALL CAUSES OF ACTION)

**WHEREFORE**, judgment is prayed for herein against defendants, and each of them, as follows:

1.      That no other family has to experience what Plaintiffs did as result of what LAPD deems to be avoiding eye contact while allegedly operating a vehicle;

2.      Reasonable fees of consultants, accountants and experts, and other disbursements;

3.      For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law;

4.      Costs of suit incurred by Plaintiffs herein;

5.      Punitive damages on the causes of action where such damages lie pursuant to California law; and

6.      For such other and further relief as the Court may deem just and proper.

**DATED:** September 2, 2014           **MARTINIAN & ASSOCIATES, INC.**


_____/S/_____
**TIGRAN MARTINIAN**
**ARASH H. ZABETIAN**
*Attorneys for Plaintiffs*


**LAW OFFICE OF PAT HARRIS, PC**

**EUGENE P. HARRIS**
*Attorneys for Plaintiffs*

## REQUEST FOR JURY TRIAL

Plaintiffshereby demand a jury trial in this action as allowed by California law.

**DATED:** September 2, 2014                    **MARTINIAN & ASSOCIATES, INC.**


_____/S/_____
**TIGRAN MARTINIAN**
**ARASH H. ZABETIAN**
*Attorneys for Plaintiffs*


**LAW OFFICE OF PAT HARRIS, PC**

**EUGENE P. HARRIS**
*Attorneys for Plaintiffs*

SECOND AMENDED COMPLAINT
DEMAND FOR JURY TRIAL
Case No. CV14-6231 RGK-FFM

CERTIFICATION OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I hereby certify that on September 2, 2014 a copy of the following document was filed with the court via electronic filing:

**PLAINTIFFS' SECON AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Furthermore a copy of the abovementioned documents were served on the interested parties in this action as follows:

**Attorney for Defendants**

Thomas H. Peters
Cory M. Brente
Colleen R. Smith
CITY ATTORNEYS OFFICE
200 North Main Street
6th Floor, City Hall East
Los Angeles, CA 90012

☒**By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at addresses on the parties identified above, by depositing the sealed envelope with the United States Postal Service, with the postage fully prepaid, or by placing the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

❑**By Fax Transmission.** I faxed the documents to the persons at the fax numbers listed on the attached Service List. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

❑**By Electronic Service.** As a courtesy, I caused the documents to be sent to the persons at the electronic notification addresses listed on the attached Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**DATED:** September 2, 2014              **MARTINIAN & ASSOCIATES, INC.**


_____/S/_____
**ARASH H. ZABETIAN**
*Attorneys for Plaintiffs*

